**Kariem THOMPSON, Petitioner,**

v.

**Gerald L. LOZUM, et al., Respondents.**

**Civil Action No. 05–2503.**

United States District Court,
E.D. Pennsylvania.

March 31, 2008.

Kariem Thompson, Philadelphia, PA, pro se.

David Curtis Glebe, Office of the District Attorney, Philadelphia, PA, for Respondents.

## ORDER

JOHN P. FULLAM, District Judge.

AND NOW, this 31st day of March, 2008, upon careful and independent consideration of the Petition for Writ of Habeas Corpus, the Response thereto, and after review of the Report and Recommendation ("R & R") of United States Magistrate Judge Arnold C. Rapoport dated January 18, 2008, IT IS HEREBY ORDERED that:

1. the R & R is APPROVED and ADOPTED;

2. the Petition for Writ of Habeas Corpus is DENIED with prejudice without an evidentiary hearing; and

3. there is no probable cause to issue a certificate of appealability.

## REPORT AND RECOMMENDATION

ARNOLD C. RAPOPORT, United States Magistrate Judge.

Presently before the Court for the second time is the *pro se* Petition for Writ of Habeas Corpus filed by the Petitioner, Kariem Thompson ("Petitioner"), pursuant to 28 U.S.C. section 2254. For the reasons that follow, it is recommended that this Petition should be denied with prejudice and dismissed without an evidentiary hearing.

## I. PROCEDURAL HISTORY.[1]

The Petition was filed on May 26, 2005, and this case was assigned to the Honorable John P. Fullam, who referred it to me for preparation of a Report and Recommendation ("R & R"). On August 23, 2005, this Court issued its R & R recommending that the Petition should be dismissed without prejudice for failure to exhaust state remedies. On September 21, 2005, Judge Fullam recommitted this matter to this Court for preparation of an additional R & R. In his remand Order, Judge Fullam stated:

Ordinarily, I would agree with the Magistrate Judge. But because of the unusual posture of this case, further exhaustion of state court remedies should not be required. Petitioner's sentence was imposed in February 1999. His direct appeal was not decided by the Superior Court until December 4, 2003, more than four years later. The Pennsylvania Supreme Court denied allocatur on May 4, 2004. Promptly thereafter, on July 21, 2004, petitioner sought relief in the trial court pursuant to the PCRA. That application had not yet been acted upon when petitioner filed the present habeas corpus action, on May 26, 2005.

1. This information is taken from all the documents of record in this case.

On August 5, 2005, the state trial court dismissed the PCRA application.

In his direct appeal, petitioner asserted several seemingly colorable claims, several of which challenged the adequacy of his legal representation at trial. On direct appeal, the Superior Court did not reach any of the substantive issues. As to some, trial counsel had failed to preserve the issue. As to others, appellate counsel had failed to brief the issue. Having thus found that both trial and appellate counsel had failed to provide adequate representation, the Superior Court nevertheless declined to consider the issue of effectiveness of counsel, because of procedural reasons (such claims should be raised in collateral attacks, not on direct appeal).

There is no explanation in the record as to why the PCRA courts have rejected the claims of counsel's ineffectiveness—a result which, one would think, is directly contrary to the reasoning of the Superior Court on appeal.

Be all that as it may, I am satisfied that, under the principles set forth in *Lee v. Stickman*, 357 F.3d 338 (3d Cir. 2004) and the cases cited therein, no further delay should be required. This case will be returned to the Magistrate Judge for a further Report and Recommendation addressing the merits of the habeas corpus petition.

*See* Dkt. No. 9; Sept. 21, 2005 Mem. & Order at 1–2.

The District Attorney of Philadelphia County, on behalf of all Respondents, was ordered to file a supplemental Response to the Petition. Respondents filed a Supplemental Answer to the Petition on January 9, 2006, attaching the December 4, 2003 decision of the Pennsylvania Superior Court affirming Petitioner's judgments of sentence. Petitioner filed a Reply to the Response dated January 12, 2006, and supplemented this Reply with correspondence to the Court on March 25, 2006, notifying the Court that he no longer has any appeals pending in the state courts. Based on the overall lack of information received by this Court related to Petitioner's claims, I issued an Order to the state court requesting the state court records for Petitioner's case. The record was received in Chambers on October 2, 2006, but was woefully inadequate and was comprised only of the docket sheets for the state court proceeding. Thus, this Court sought relevant state court records from the District Attorney's Office files. These documents were received on January 31, 2007.

On February 2, 1999, following a bench trial before the Honorable Gregory E. Smith in the Court of Common Pleas of Philadelphia County, Petitioner was convicted of five counts of robbery, five counts of reckless endangerment, criminal conspiracy, theft, and weapons offenses.[2]

2. The facts established at trial as related in Judge Smith's trial court opinion were:

On February 23, 1999, the defendant and another individual entered 6558 North 5th Street which housed a catering business owned by the victim, Mr. Yang. One of the intruder [sic]carried a handgun and the other had a knife. Mr. Yang, his family, and employees were forced into the basement where they were handcuffed and gagged. When the robbery was complete, the defendant and the other individual escaped in the victim's Green Ford Bronco.

Police officer Mulholland responded to a report of Robbery at that location and found Mr. Yang at the back door exit speaking Korean. The victim's daughter, Jennifer, translated telling the officer that two men armed with a revolver had robbed the business and taken the owner's vehicle. Physical descriptions were given for each assailant. (N.T. 2-2-99 p. 6–7). In addition, the officer learned that one of the assailants had touched certain plastic food containers which were still on the counter. The officer secured the area and preserved

Judge Smith sentenced Petitioner to an aggregate term of ten to twenty years' imprisonment on March 16, 1999.

Petitioner filed a direct appeal in the Pennsylvania Superior Court, which affirmed his sentence on December 4, 2003. *See Commonwealth v. Thompson*, 844 A.2d 1289 (Pa.Super.2003) (table). On December 26, 2003, Petitioner filed a petition for allowance of appeal. The Pennsylvania Supreme Court thereafter denied allocatur on May 4, 2004. *See Commonwealth v. Thompson*, 578 Pa. 689, 849 A.2d 1205 (2004) (table).

On July 21, 2004, Petitioner filed a *pro se* petition pursuant to the Pennsylvania Post–Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. §§ 9541, *et seq.* Counsel was appointed and filed an amended petition alleging that trial counsel was ineffective for: (1) failure to seek either a jury trial and/or a recusal after the Judge litigated his pre-trial motion to suppress identification; and (2) failure to raise the claim of suppression of any statements under *Miranda*, since petitioner was a juvenile at the time of the crime and was questioned without an adult present, thus causing the Superior Court to consider that issue waived and deny petitioner relief forever. Petitioner, in his counseled petition, also alleged that appellate counsel was ineffective because: (1) he failed to fully develop the insufficiency of evidence argument in the appellate brief, thus causing the Superior Court to consider that issue waived and deny petitioner relief forever; and (2) he failed to comply with the requirements of Pa. R.A.P. 2119(f), thus causing the Superior Court to consider that issue of his discretionary aspects of sentencing waived and deny petitioner relief forever. In an Order dated August 5, 2005, Judge Smith dismissed the PCRA petition.[3] Petitioner filed an appeal with the Pennsylvania Superior Court, and Petitioner notified this Court by letter dated March 25, 2006, that he received a Notice of Discontinuance of Action from the Superior Court on March 23, 2006.

On May 26, 2005, Petitioner filed the instant *pro se* Petition for Writ of Habeas Corpus. In Response, Respondents contended that the Petition should be denied without prejudice given the pendency of Petitioner's PCRA case. In a Report and Recommendation dated August 23, 2005, we concurred with the Respondents and recommended to Judge Fullam that the Petition should be dismissed without prejudice. Judge Fullam entered an Order

the evidence for fingerprint analysis. (N.T. 2–2–99 p. 9–10).

Kenneth Sykes, a police finger print expert testified that he received 10 "Lifts" from the plastic items recovered at the Robbery scene, five of which were positively identified as belonging to the defendant Kareem Thompson. (N.T. 2–2–99 p. 20).

Prior to trial the court suppressed the identifications of three of the victims. However, Mr. Yang identified the defendant as the man who entered the store in the company of a heavier black male. Mr. Yang testified that the defendant, who was carrying a knife, ordered his family and him into the basement where everyone was handcuffed except Mr. Yang's elderly mother. Jewelry and $1,000.00 in cash was taken from the Yangs. The defendant felt that the Yangs had more, so he placed a gun to one of the victim's head and pulled the trigger in an attempt to exhort more money. After making racial slurs and threats, the two robbers left the Yangs physically [unharmed].

1/3/00 Tr. Ct. Op., pp. 2–3.

3. The reasons for Judge Smith's decision have never been provided to this Court. The anemic record provided by the state court which was labeled "Dummy File," did not include either an April 29, 2005 letter from Judge Smith to Petitioner regarding notice of the PCRA court's intention to dismiss the PCRA petition and the reasons for the dismissal or the attachments thereto.

dated September 21, 2005, rejecting the R & R and directing that an additional R & R should be submitted on the possible merits of Petitioner's claims. In their Supplemental Answer to the Petition, Respondents contend that the claims in the Petition are meritless, and the Petition should be dismissed with prejudice.[4]

## II. DISCUSSION.

Petitioner presents the following issues for review by this Court:

(1) the evidence was insufficient to convict the Defendant of the charge in violation of the 5th and 14th Amendment[s] because the witnesses did not make identification through photo spread (N.T. October 7, 1998, pg.11, 12), yet they later went to a subsequent lineup. They still were allowed to view the spread before the lineup (N.T. October 7, 1998 p. 3) The judge suppress[ed] the i.d. then allowed it back in court; the sentence was excessive in violation of the 5th and 8th Amendments because [Petitioner] never had any prior convictions and was a juvenile, and he did not possess a gun during this crime (N.T. January 13, 1998 p. 8) in support (N.T. November 11, 1998 p. 11); (3) ineffective assistance of counsel in violation of the 6th Amendment for failure to seek a jury trial and/or recusal after the Judge litigated his pre-trial motion to suppress identification. Also, appellate counsel deemed ineffective for not following the requirements of Rule 2119(f); and (4) the fingerprint evidence should have been suppressed as their [sic] was no testimony that the defendant touch[ed] anything. This was a public place and the [Defendant's] fingerprints that was [sic] found on the plastic container, was in a place accessible to the general public. Furthermore, their [sic] were other prints found on the plastic container. Violation of the 4th, 14th Amendment. Pet., pp. 9–10. Each claim is hereafter examined.

### A. Whether the Evidence Was Sufficient to Convict Petitioner of the Charges Against Him in Violation of the Fifth and Fourteenth Amendments.

Petitioner's first claim is that the evidence presented by the Commonwealth was insufficient to convict him, and violated his Fifth and Fourteenth Amendment rights. With respect to whether the evidence was sufficient to sustain Petitioner's convictions for robbery, reckless endangerment, criminal conspiracy, theft, and weapons offenses, Petitioner did not present this claim to every level of the state court and, as a result, did not exhaust his state court remedies with respect to this claim. Petitioner is now time-barred from pre-

---

4. In a footnote, Respondents also argue that Judge Fullam's result is unusual because it is based upon a comparison of the delays in Petitioner's case with the excessive delays described in *Lee v. Stickman*, 357 F.3d 338 (3d Cir.2004). They argue that the initial delays related to petitioner's direct appeal were remedied with the restoration of his appellate rights, after which his appeal also proceeded without undue delay.

Respondents also question Judge Fullam's observation on page two of his Order that the PCRA courts' rejection of petitioner's ineffectiveness claim was "directly contrary to the reasoning of the Superior Court on direct appeal." They argue that no contradiction is evident because the ineffectiveness of counsel does not follow from the fact that a habeas petitioner's trial and appellate counsel chose not to brief issues that the applicant may have thought to be valid since the petitioner may well have been wrong. They rely on *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for the concept that counsel's choices of the issues to appeal and the issues to disregard are presumed to have been competently made, and are therefore entitled to substantial deference.

senting this claim to the state court. Thus, the claim is technically exhausted, but review on the merits is procedurally barred. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

If a petitioner's claims have been procedurally defaulted, a federal court cannot review these claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To satisfy the cause and prejudice requirement, courts have held that cause exists when a petitioner demonstrate[s] "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." *Slutzker v. Johnson,* 393 F.3d 373, 381 (3d Cir.2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *Cristin v. Brennan,* 281 F.3d 404, 412 (3d Cir.), *cert. denied,* 537 U.S. 897, 123 S.Ct. 195, 154 L.Ed.2d 166 (2002) (quoting *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546). The cause must be "something that cannot fairly be attributed to the petitioner." *Johnson v. Klem,* No. CIV.A. 04–410, 2004 WL 1175575, at *2 (E.D.Pa. May 26, 2004) (quoting *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546). Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage. *U.S. v. Rodriguez,* 153 F.Supp.2d 590, 594 (E.D.Pa.2001) (quoting *U.S. v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). In alternative to showing cause and prejudice, a petitioner must show that failure to review the federal habeas claim will result in a "miscarriage of justice." *Johnson,* 2004 WL 1175575, at *2 (citing *Werts v. Vaughn,* 228 F.3d 178, 193 (3d Cir.2000)). To show that a funda-

mental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin,* 281 F.3d at 412 (citing *Keller v. Larkins,* 251 F.3d 408, 415–416 (3d Cir.2001)). To establish the requisite probability of actual innocence, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

■ Nonetheless, even if Petitioner had exhausted this claim, it would still fail. Petitioner contends that the witnesses who testified against him did not make an initial identification through a photo array, yet later, before a line-up, they were able to view a photo array. Petitioner contends that Judge Smith, the trial judge, suppressed the identification, but then "allowed it back in court." Petitioner presented this argument to the Superior Court on direct review. The court stated:

> Appellant first maintains that the "evidence" used to convict him was not sufficient in that the identification of him as the perpetrator was improper because he, although identified at a lineup, was not identified at a photo array shown to the witnesses. Appellant's Brief at 6. Appellant further asserts that it was only after the Commonwealth had formally charged him with the crime that Mr. Yang was able to supply any identification testimony. He notes his identification at the lineup was suppressed. *Id.* at 6. Appellant argues that the identification of him at the pretrial hearing is tainted identification testimony. *Id.*

> While Appellant designates this issue as a challenge to the sufficiency of the

evidence, he presents no analysis on the sufficiency or insufficiency of the evidence in this case. Instead, Appellant crafts an entire argument which attempts to establish that the in-court identification of him by Mr. Yang was tainted. Failure to develop an argument on appeal constitutes waiver of the claim. *See Commonwealth v. Luktisch,* 451 Pa.Super. 500, 680 A.2d 877, 879 n. 1 (1996). Because Appellant has failed to develop this claim, it is waived.

*Commonwealth v. Thompson,* 844 A.2d 1289 (Pa.Super.2003), pp. 2–3. The standard of review for challenges to the sufficiency of the evidence on habeas review was set forth in *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), where the Supreme Court explained:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt .... Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–319, 99 S.Ct. 2781. Reviewing the evidence according to the habeas standard that governs this Court, the admissibility of Mr. and Mrs. Yang's in-court identifications should be upheld. Judge Smith wrote the following:

> The test for sufficiency is to accept all the evidence and reasonable inferences drawn from that evidence in the light most favorable to the verdict winner. Under this test, the evidence so viewed must be sufficient to prove each crime beyond a reasonable doubt. *Commonwealth v. Grekis,* 601 A.2d 1275 (Pa.

1992). As trier of fact, the court is free to believe all, part or none of the evidence presented from any witness or combination of witnesses. *Commonwealth v. Rochon,* 398 Pa.Super. 494, 581 A.2d 239 (1990).

> The court was convinced by the fingerprint evidence and other identification evidence that the defendant was guilty beyond a reasonable doubt.

> For all the above reasons the judgment of sentence should be affirmed.

Tr. Ct. Op., 1/3/00, p. 3. In a later Opinion, dated January 21, 2003, Judge Smith states: "The defendant through new court appointed counsel claims the following: 1) That the evidence at trial was insufficient to support the guilty verdict. This issue is adequately addressed in this court's previous opinion." 1/2/03 Tr. Ct. Op., p. 1.

In the instant Petition, Petitioner now alleges that Judge Smith erred because the Yangs' prior viewing of the photo array purportedly tainted their in-court identifications as well. Respondents note that the issue is whether the independent basis for the identification evidence was "of sufficient strength to outweigh any corrupting influence." *Burkett v. Fulcomer,* 951 F.2d 1431, 1448 (3d Cir.1991). They note that Mr. and Mrs. Yang had a sufficient independent basis for their identifications of Petitioner even though their later viewing of a photo array did not result in identification. They had seen and interacted with Petitioner and his accomplice at close range even before the robbery commenced, and they observed Petitioner and his accomplice even closer when they forced the Yangs into the basement of their store. Judge Smith's decision not to suppress the Yangs' in-court identification of Petitioner did not violate federal due process considerations because any suggestiveness regarding the Yang's viewing of the photo array could be considered as

outweighed by their personal, direct, and up-close observations of Petitioner and his accomplice. Thus, Petitioner's challenge to the sufficiency of the evidence supporting his convictions must be denied.

### B. Whether Petitioner's Sentence Was Excessive in Violation of His Fifth and Eighth Amendment Rights.

 Petitioner next contends that his sentence was excessive and violated his Fifth and Eighth Amendment rights. Petitioner argues that he was a juvenile with no prior convictions, and he did not possess a gun during this crime. This claim was presented on direct review of Petitioner's sentence. Judge Smith, the trial Judge, stated:

4) The defendant next claims that his sentence was excessive. Challenges to the discretionary aspect of sentencing must raise a substantial question in order to be considered by an appellate court.

The defendant claims do not raise a substantial question. The court ordered a presentence and mental health reports and also considered the defendant's age and his criminal background. The court also considered the facts of this case and the fact that the victims were held hostage and terrorized. The sentence was appropriate under the circumstances. No substantial question has been raised.

Tr. Ct. Op., 1/21/03, p. 2. The Superior Court held:

Fourth, Appellant argues that his sentence was excessive. Appellant's Brief at 14. Appellant contends that the sentencing court did not fully consider his tender age and the sentencing guidelines in imposing sentence. Id. at 14. Additionally, Appellant argues that the sentencing judge did not state the reasons for the sentence imposed on the record

and the sentences imposed were unduly harsh and oppressive and did not reflect the particular circumstances of the crimes or Appellant's character, history and rehabilitative needs. Id.

There is no absolute right to direct appellate review of a discretionary sentencing claim, and a party wishing to raise such an issue must petition this Court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. Commonwealth v. Khalil, 806 A.2d 415, 423 (Pa.Super.2002). Challenges to the discretionary aspects of sentences must comply with Pa.R.A.P. 2119(f), which states:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Here, Appellant has failed to comply with the requirements of Pa.R.A.P. 2119(f) because he has not filed a concise statement of reasons relied upon for allowance of appeal. The Commonwealth has objected to this deficiency. Accordingly, we decline to review Appellant's sentencing claim and find it waived. Cf. Commonwealth v. Lutes, 793 A.2d 949, 964 (Pa.Super.2002) (holding that if the appellant fails to comply with Pa.R.A.P. 2119(f), Superior Court may entertain discretionary sentencing claim if Commonwealth does not object to the appellant's failure to comply with Pa.R.A.P. 2119).

Commonwealth v. Thompson, 844 A.2d 1289 (Pa.Super.2003), pp. 4–5. Given the Superior Court's holding, this claim is also

procedurally defaulted. Petitioner makes the following arguments in his Reply to the Response:

1. Petitioner states that even though there were numerous counts of the crime the incident arose out of one situation which caused the crime to fall under the merger rule. The respondent[ ]s know that petitioner was convicted of weapon's offense which he did not possess primarily a gun. The Respondent[ ]s even state the factual evidence from the record that petitioner had a knife, cited on page two of the brief.

2. Judge Smith did not take into consideration that petitioner was a juvenile and had no prior record. The petitioner will challenge that there were no aggravating circumstances in this case. Everybody was unharmed during this crime.

For all of the reason[s] advanced by the record, Petitioner ask[s] that the sentence be vacated for purpose[ ]s of resentencing.

Pet.'s Reply, pp. 2–3. It appears that Petitioner is arguing that different penalties should apply to distinguish possession of a firearm, which his cohort was carrying during the crime, from possession of a knife. This Court notes that in Judge Smith's factual recitation in his trial court opinion, he states that:

[o]ne of the intruder carried a handgun and the other had a knife.... Mr. Yang testified that **the defendant, who was carrying a knife,** ordered his family and him into the basement where everyone was handcuffed except Mr. Yang's elder-

ly mother. Jewelry and $1,000.00 in cash was taken from the Yangs. **The defendant** felt that the Yangs had more, so he **placed a gun to one of the victim's head and pulled the trigger in an attempt to exhort more money.**

Tr. Ct. Op., 01/03/00, p. 2 (emphasis added). This factual recitation by the trial court shows that, at some point, Petitioner was in possession of a firearm, therefore his knife/firearm argument must be rejected by this Court. Moreover, this Court is required to treat the state sentencing decision with deference and cannot overturn the sentence except where it is shown to be extraordinarily unfair and unjust. *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Nothing in the record before this Court nor in Petitioner's arguments indicates that this sentence was extraordinarily unfair or unjust, therefore this claim must be denied.

### C. Whether Petitioner's Trial and Appellate Counsel Were Ineffective in Violation of Petitioner's Sixth Amendment Rights.

Petitioner's third claim is that his trial counsel was ineffective for failing to seek a jury trial and/or recusal after the trial judge litigated his pre-trial motion to suppress identification testimony. Petitioner also contends that his appellate counsel was ineffective for not following the requirements of Rule 2119(f).[5] Analysis of this claim must be performed in conjunction with the discussion in Section III.B., supra, that Petitioner's sentence was ex-

---

**5.** Pennsylvania Rule of Appellate Procedure 2119(f) involves discretionary aspects of sentence and states:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for

allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

PA. R.APP. P. 2119(f).

cessive. Although, based upon the Superior Court decision that:

> Here, Appellant has failed to comply with the requirements of Pa.R.A.P. 2119(f) because he has not filed a concise statement of reasons relied upon for allowance of appeal. The Commonwealth has objected to this deficiency. Accordingly, we decline to review Appellant's sentencing claim and find it waived. *Cf. Commonwealth v. Lutes,* 793 A.2d 949, 964 (Pa.Super.2002) (holding that if the appellant fails to comply with Pa.R.A.P. 2119(f), Superior Court may entertain discretionary sentencing claim if Commonwealth does not object to the appellant's failure to comply with Pa.R.A.P. 2119).

*Commonwealth v. Thompson,* 844 A.2d 1289 (Pa.Super.2003), p. 5. This statement by the Superior Court confirms Petitioner's argument that his counsel failed to comply with Rule 2119(f), but it does not meet the burden of proving that failure to comply with the rule is tantamount to ineffective assistance of counsel in this case.

Claims for ineffectiveness of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [ ] strategy.'" *Id.* at 689, 104 S.Ct. 2052(quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In addition, a petitioner must prove prejudice. A petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

■ In this instance, the Superior Court acknowledged that counsel did not present these issues in compliance with the court rules. Pursuant to the Superior Court decision, Petitioner still had an opportunity to present his claim that his sentence was excessive to the PCRA court. Thus, Petitioner cannot prove prejudice, and this ineffectiveness claim must be denied.

Petitioner also claims that his trial counsel was ineffective for failing to seek a jury trial and/or recusal after the trial judge litigated his pre-trial motion to suppress identification. With respect to counsel's ineffectiveness for failure to seek a jury trial, the waiver colloquy which took place on February 1, 1999, contains the following exchange:

> THE COURT: Understanding the maximum possible fines and sentences that you're exposed to, do you stil [sic] wish to give up your rights to a jury trial?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Have any threats or promises been made to you to get you to give up your right to a jury trial?
>
> THE WITNESS: No, sir.
>
> THE COURT: Are you doing so of your own free will?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Have you discussed this decision with you lawyer?
>
> THE WITNESS: Yes.
>
> THE COURT: Are you satisfied with his representation up to this point?
>
> THE WITNESS: Yes, sir.

N.T., 2/1/99, pp. 6–7. Following this exchange, Petitioner signed a waiver of jury trial form.

With respect to the argument that his counsel was ineffective for not seeking recusal after the trial judge litigated his pretrial motion to suppress identification, Petitioner argues in his Motion in Response to Respondent's Brief that:

> Petitioner was not granted this opportunity, trial counsel knowingly took a bench trial before the same judge who ruled totally contrary to his previous judgement. This was not the best decision on behave of trial counsel.
>
> Accordingly, lawyers are their [sic] to safeguard the defendant's lives. They are a body of the law and perpetrator's are not. So all procedures dealing with the court's rest solely on counsel shoulder's [sic]. They have to make the best decisions that are suitable for a fair trial.

Pet.'s Mot. in Resp., p. 4. A review of the transcript of the November 11, 1998 hearing on the motion to suppress identification reveals that Judge Smith partially granted the motion to suppress in Petitioner's favor. Again, under *Strickland,* counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052(quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In addition, a petitioner must prove prejudice. In order to do so, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable." *Id.* Thus, a petitioner must show a reasonable probability that the result of the proceeding would have been different. "A reasonable probability is sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. This determination must be made in light of "the totality of the evidence before the judge or jury." *Id.* at 695, 104 S.Ct. 2052.

The United States Court of Appeals for the Third Circuit has cautioned that "[o]nly the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir.), *cert. denied,* 527 U.S. 1050, 119 S.Ct. 2418, 144 L.Ed.2d 815 (1999) (quoting *U.S. v. Gray,* 878 F.2d 702, 711 (3d Cir.1989)). Under the revised habeas statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. *Berryman v. Morton,* 100 F.3d 1089, 1103 (3d Cir.1996).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation. Petitioner must show that he was deprived of a fair trial. *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Ramseur v. Beyer,* 983 F.2d 1215, 1239 (3d Cir.1992), *cert. denied,* 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993) (citations omitted) (stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

Petitioner does not meet his burden of proving ineffective assistance of counsel on these claims, therefore this claim must be denied.

### D. Whether the Trial Court Erred in Not Suppressing Fingerprint Evidence.

Petitioner finally contends that the fingerprint evidence found at the scene of the

robbery should have been suppressed because no testimony was presented indicating that Petitioner touched anything, and the store where the robbery occurred was a public place. According to Petitioner, the plastic container upon which his fingerprints were found was in a place accessible to the general public and other prints were also found on the plastic container, not just Petitioner's fingerprints. Thus, Petitioner contends that this failure to suppress the fingerprint information was a violation of his Fourth and Fourteenth Amendment rights.

Petitioner also presented this claim on direct review of his sentence. Judge Smith examined Petitioner's claim that "the fingerprint evidence should be suppressed because there [wa]s no evidence that [Petitioner] touched anything" and stated that:

> The record contradicts this assertion. The defendant was identified as one of the perpetrators of the robbery. Detective Charles Kwisz visited the defendant and his mother after discovering the defendant's latent print inside the store and the defendant claimed to have never been in the store. (N.T. 10-7-98 p. 13–15). This evidence was compelling and this claim is without merit.

Tr. Ct. Op. 01/21/03. The Superior Court, in reviewing this claim, stated:

> Third, Appellant asserts that the fingerprint evidence should have been suppressed as there was no testimony that Appellant touched anything on the premises. Appellant's Brief at 12. Appellant also argues that the location of the robbery was a "public place," and thus he could have left his print on the container innocently, during a delivery or when picking up a "to go" order. Appellant's Brief at 14.
>
> Initially we note that this claim was not raised at the trial court level. Ac-

cordingly, this claim is waived. Moreover, there was testimony at trial that Appellant did touch the container on which his fingerprint was found just prior to initiating the robbery. We find this claim to also lack merit.

*Commonwealth v. Thompson,* 844 A.2d 1289 (Pa.Super.2003), p. 4. Federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, and the petitioner must demonstrate that a reasonable factfinder could not have reached the same conclusions given the evidence. 28 U.S.C. § 2254(d)(2). If a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted. *Campbell v. Vaughn,* 209 F.3d 280, 290–291 (3d Cir.2000), *cert. denied,* 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1). Here, Petitioner does not present any evidence to rebut the factual determinations by the state court. Thus, this claim for relief should be denied.

For all of the above reasons, I make the following:

### *RECOMMENDATION*

AND NOW, this 18th day of January, 2008, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. section 2254 should be DENIED and DISMISSED with prejudice. There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.